## DETROIT TERMINAL R. CO. v. PENNSYLVANIA–DETROIT R. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 9, 1926.)

No. 4566.

Railroads ⟨⟩7.

Uncompleted part of railroad, substantially completed before Transportation Act, is not such new line or extension as requires certificate of public convenience and necessity, under section 402, par. 18 (Comp. St. § 8563).

Appeal from the District Court of the United States for the Eastern District of Michigan; Charles C. Simons, Judge.

Suit by the Detroit Terminal Railroad Company against the Pennsylvania-Detroit Railroad Company and another. From a decree denying an injunction and dismissing the bill of complaint (4 F.[2d] 705), plaintiff appeals. Affirmed.

John J. Danhof, Jr., of Detroit, Mich. (Frank E. Robson and H. R. Martin, both of Detroit, Mich., on the brief), for appellant.

Clifton G. Dyer, of Detroit, Mich., for appellees.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DONAHUE, Circuit Judge. This is an appeal from a decree of the District Court

denying an injunction and dismissing the bill of complaint in an action brought by the Detroit Terminal Railroad Company to enjoin the Pennsylvania-Detroit Railroad Company and Pennsylvania Railroad Company from constructing a line of railroad in and through the city of Detroit, Mich., from a point 600 feet west of Livernois avenue to Van Dyke avenue in said city, unless and until defendants secure from the Interstate Commerce Commission a certificate of public convenience and necessity, as required by paragraph 18 of section 402 of the Transportation Act of February 28, 1920, amending section 1 of the Interstate Commerce Act (Comp. St. § 8563). The Pennsylvania-Detroit Railroad Company is the owner of the road proposed to be constructed, and part of which has been completed and leased to the Pennsylvania Company.

In the disposition of this case it is unnecessary to discuss the facts in detail. There is no substantial conflict in the evidence. It fully sustains the conclusion of the trial court that the proposed construction from Livernois avenue to Van Dyke avenue is part and parcel of a unitary project as originally planned in 1914, or at the latest in 1917, as suggested and requested by the officials of the city of Detroit in 1912, to build a line of railroad into, partly through and partly around the city of Detroit, the construction of which was undertaken by the defendants prior to the passage of the Transportation Act of 1920 (41 Stat. 456), and that this portion reaching the industrial district of Detroit, yet to be constructed, is not only an essential part of the proposed railroad, but actually necessary to operation at a profit of the part already constructed, and that particularly the construction of that part of road from Delray to Livernois avenue would be purposeless, unless continued to the sources of freight traffic.

Nor is there any evidence in this record, except the delay in construction, tending to prove that the Pennsylvania Company that formed the original plan or the Pennsylvania-Detroit Railroad incorporated under the laws of Michigan for the purpose of constructing this road, or either of them, at any time abandoned any part of this unitary project to build this railroad as originally planned, the construction of which was undertaken at least as early as 1917.

The evidence also tends to prove that the delay in the construction of this line of rail-road described in the charter of the Pennsylvania-Detroit Railroad Company was occasioned by the government taking possession of the railroads during the war and refusing to appropriate money to complete the same, by the refusal of the Detroit Terminal Company to agree to any arrangement for the crossing of its tracks and by a disagreement between the Pennsylvania Company and the Pere Marquette Company in reference to a lease of a part of its tracks and facilities to be operated in connection with the proposed line.

It is insisted, however, upon the part of the appellant, that the line of this proposed road from Oakman boulevard to Van Dyke avenue was never definitely located until 1923 when the plat was filed with the Michigan Railroad Commission, but the evidence is practically conclusive that this line was definitely located as early as 1919; that the land agent of the railroad company was then directed to purchase the right of way; that early in 1920 a map showing this final location was prepared for condemnation proceedings, and that the location shown on that map is identical with the location shown on the map filed with the Michigan Railroad Commission in 1923 and approved by that commission January 10, 1924, except a slight change therein made necessary to avoid the location of a proposed city park.

It is further insisted upon the part of the appellant that, regardless of whether the portion yet to be constructed was or was not a part of the unitary project as originally planned, the construction of which was undertaken and largely completed prior to the passage of the Transportation Act of 1920, the uncompleted portions cannot be constructed unless and until a certificate of convenience and necessity is obtained from the Interstate Commerce Commission.

This question is not free from doubt. The Supreme Court has discussed the object and purposes of this act in a number of cases, but this exact question was not involved in either of them. The Interstate Commerce Commission has held that, where ''construction was begun in good faith prior to the effective date of section 1, paragraph 18, and the work has been prosecuted with reasonable diligence, under the circumstances, in accordance with the original plan. It follows that no certificate of public convenience and necessity is required.'' In the matter of the Uvalde Northern Railroad Co., etc., 67 Interst. Com. Com'n R. 554; In the matter of the Gulf Port Ter-

minal Railroad Co., etc., 71 Interst. Com. Com'n R. 759.

The construction given this paragraph by the Interstate Commerce Commission is, undoubtedly, a reasonable one. A different construction would work a serious hardship to a company that had undertaken in good faith the construction of a line of railroad and had prosecuted that construction with reasonable diligence in view of the delays occasioned by circumstances not under its control. We are not unmindful of the importance of maintaining, unimpaired, existing means of transportation or of the purpose of paragraph 18 to prevent ruinous competition between the carriers of interstate commerce.

In this case it clearly appears from the evidence that the Pennsylvania Company as early as 1914 reached the conclusion that what Detroit required was not an additional line of railroad, but better terminal facilities and that the construction of a main line into Detroit would be unprofitable, unless it reached the industrial districts of that city. It was for this reason that the original plan comprehended and included, not merely the construction of a main line entering the city, but also the continuation of that line or a belt line in connection therewith that would reach the portions of the city that would furnish the freight to be transported over the main line, as a unitary project, all parts of which were deemed essential by defendants to the success of the venture, and no part of which has ever been abandoned by either of the defendants.

After reaching this conclusion the defendants undertook the construction of the road as contemplated in the original plan and expended over $13,000,000 in constructing the part of the road completed to Livernois avenue, grading the roadbed to Oakman boulevard and in obtaining the right of way to Van Dyke avenue. The completion of the road as originally planned will not require the expenditure of more than approximately $1,500,000. This is but a trifling amount compared with what has already been expended; nevertheless, there is substantial evidence tending to prove that, if the defendants are not permitted to construct this part of the road as originally planned, the value of the road already constructed will be materially impaired and that part of the road already constructed from Delray to Livernois avenue will be practically worthless.

Paragraph 18 provides in part: "No carrier by railroad subject to this act shall undertake the extension of its line of railroad, or the construction of a new line of railroad, * * * unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad."

A railroad cannot all be constructed at one time, but, if construction has actually been commenced in a substantial way, it would seem that construction is undertaken within the meaning of paragraph 18 of the entire line included in the unitary project as originally planned by the company proposing to construct the same. It would seem to follow that, where the construction of a line of railroad has been undertaken in good faith, prior to the passage of the Transportation Act, and, as in this case, the construction substantially completed, the part uncompleted, whether at one end or in the middle, is not to be segregated and separated from the original project, and held to be a new line or an extension of an existing line requiring a certificate of public convenience and necessity before the construction of that part may be completed.

Affirmed.